## Crosby v. Transport Workers Union of Philadelphia, Local 234

*Stanley M. Greenberg* and *L. M. Sagot*, for plaintiff.

*David H. H. Felix*, for Transport Workers Union.

*Peter Patane*, for PTC.

SPORKIN, J., January 31, 1963.—Evelyn Crosby, Elizabeth Mandes and John Reichner filed separate complaints in equity against Transport Workers Union

of Philadelphia, Local 34 (hereafter called union defendant) and Philadelphia Transportation Company [1] (hereafter called PTC).

In her complaint, Evelyn Crosby (hereafter called plaintiff) alleges that: she is a member of union defendant; she was discharged from her employment with PTC; union defendant wilfully, carelessly, arbitrarily and unreasonably failed and refused to submit to arbitration the propriety of said discharge, in violation of the terms of the collective bargaining agreement existing between union defendant and PTC. By way of relief, plaintiff seeks an order compelling union defendant to submit her case to arbitration and for money damages.

The answer of union defendant admits the refusal to submit the propriety of plaintiff's discharge to arbitration, denies any misconduct toward plaintiff, and avers that it represented plaintiff fairly and properly and in accordance with its fiduciary obligation to its membership, and prays for dismissal of the bill.

The evidence before us discloses that: plaintiff was appointed as a cashier on the Market-Frankford Subway Elevated of PTC on September 14, 1953; PTC had

---

[1] As appears from the captions, two of the cases (Crosby and Reichner) were docketed to this court, and the third case (Mandes) was docketed to Court of Common Pleas No. 1. Since all three cases involved identical issues, the Mandes case was, by stipulation, transferred to Court of Common Pleas No. 2. When the cases came before us for trial on March 5, 1962, on motion of counsel for union defendant, the cases of Mandes and Reichner were dismissed with prejudice. Counsel for Mandes and Reichner agreed to the dismissal of their cases, stating that Mandes did not desire to proceed with her case, and Reichner was unable to establish the allegations in his complaint. In the Crosby case, on motion and by stipulation, the complaint as respecting PTC was dismissed with prejudice, leaving for our determination only the complaint of Crosby against union defendant.

in effect a system of sick-leave allowances for its employes, whereby upon entering employment, each employe is granted 60 days of allowable sick-leave; thereafter, on each yearly anniversary of employment, an additional 60 days of allowable sick-leave are added; from time to time, for good cause shown, PTC has granted extensions of sick-leave to individual employes, over and above allowable sick-leave; and an employe whose absences from work are in excess of the allowable sick-leave, and any extensions which may have been granted, is subject to discharge by the company.

The evidence further discloses that by September 14, 1960, plaintiff was entitled to 487 days of allowable sick-leave, including extensions granted to her, of which plaintiff had used 485 days, due to illness; in November, 1960, plaintiff became ill with a condition diagnosed as a duodenal ulcer; on November 23, 1960, by letter signed by J. F. Weber, Depot Superintendent, PTC granted her an additional 30 days of sick-leave; on December 28, 1960, again by letter signed by Mr. Weber, PTC extended plaintiff's sick-leave to and including January 31, 1961; by January 31, 1961, plaintiff had been absent a total of 561 days during the seven and one-half year term of her employment with PTC; her accrued sick-leave allowance, plus extensions, at that time totalled 547 days; and on February 1, 1961, PTC terminated plaintiff's employment because her absences exceeded the maximum number of sick-leave days, including extensions, accorded her.

In presenting her case, plaintiff testified that: her physician advised her not to return to work on February 1, 1961; on January 31, 1961 she presented herself to the offices of the medical department of PTC and requested a further extension of her sick-leave, at which time she was informed that the company doctor

was not in attendance and that the nurse in charge had no authority to grant extensions; she thereafter met one Arthur Thomas who "works in public relations with the Philadelphia Transportation Company" and asked him to intercede with the company to obtain a further extension; Thomas told her that an extension was granted effective January 31, 1961, and expiring March 1, 1961; and plaintiff did not receive a written confirmation of this alleged extension, as in previous instances.

Plaintiff testified further that: following discharge from employment on February 1, 1961, she communicated with various officers of union defendant, in an effort to have grievance proceedings commenced for her reinstatement, in accordance with the collective bargaining agreement between union defendant and PTC; she had frequent discussions on this subject with the chairlady and the acting chairlady of plaintiff's section of union defendant, the union defendant's vice-president in charge of her department, union defendant's recording secretary and president, and the representative and director of organization of the international union, with which union defendant is affiliated; and on several occasions, union defendant's representatives advised plaintiff that its executive board had investigated and discussed her case, had decided that her grievance was unjustified and that the institution of arbitration proceedings would be fruitless on the precedent of the Lonergan case.[2]

The law governing the relationship between a union and its members is set forth in Falsetti v. Local Union

---

[2] Lonergan was an arbitration case between union defendant and PTC, decided on October 21, 1958, holding that discharge of an employe for absences in excess of allowable sick-leave is a legitimate exercise of the company's discretion and will be sustained unless the company acted in a capricious or discriminatory manner.

2026, United Mine Workers of America, 400 Pa. 145 (1960), at page 171, as follows:

"The aggrieved member-employee, limited to seeking relief against the Union, is not without effective remedy. In entering into this [collective bargaining] Agreement, the Union has assumed the role of trustee for the rights of its members and other employees in the bargaining unit. The employees, on the other hand, have become beneficiaries of fiduciary obligations owed by the Union. As a result, the Union bears a heavy duty of fair representation to all those within the shelter of its protection. [Citations omitted] If the Union, in processing an employee's grievance, does not act in good faith, in a reasonable manner and without fraud, it becomes liable in damages for breach of duty."

In a footnote on the same page (171) of Falsetti, the court quoted, with approval, the following statement of Professor Archibald Cox, now Solicitor General of the United States, in 8 Labor L. J. 850, 858-9 (1957), defining a union's duty:

"The bargaining representative would be guilty of a breach of duty if it refuses to press a justifiable grievance either because of laziness, prejudice or unwillingness to expend money on behalf of employees who were not members of the union. . . . It would be a defense to show that the union and employer had made a settlement or that the union's decision not to press the claim was honest and reasonable. . . .

"In evaluating the protection available through enforcement of the duty of fair representation, one must recognize that there are no ready-made standards of fairness. Plainly, the duty is violated whenever the union's handling of a grievance is influenced by union memberships or activities, union politics, the exercise of political rights, or sheer favoritism."

Falsetti also quotes with approval the following

statement of Professor Kurt L. Hanslowe in 45 Cornell L. Q., 25, 46-47 (1959) :

"The union's conduct must not be wilful, arbitrary, capricious or discriminatory. . . . Its decisions with respect to individual grievances must have been honest and reasonable. The rejection of a grievance by a union must have been on the merits, in the exercise of honest discretion and/or sound judgment, following a complete and fair investigation. The rejection must not have been unjust in any respect. There must not have been bad faith or fraud. The bargaining agent must not have acted in a negligent manner."

The question which lies at the heart of this case is whether or not union defendant acted in good faith, reasonably, and without fraud, in refusing to process plaintiff's grievance. The answer to this problem turns on whether or not the PTC acted capriciously or in a discriminatory manner in discharging plaintiff from her employment. Certainly, if the PTC had granted plaintiff a 30 day extension on January 31, 1961, and dismissed her on the following day, plaintiff would have had a justifiable complaint, and the refusal of union defendant to institute grievance proceedings would have been a violation of its fiduciary obligation to plaintiff. Such is not the case here.

In our view, no credible evidence was presented to establish that plaintiff's sick-leave was extended by PTC on January 31, 1961. Plaintiff's testimony that Arthur Thomas advised her that an extension was granted is, at best, pure hearsay and cannot be credited. Even assuming that Thomas did verbally grant plaintiff an extension, the record is barren of any competent evidence that he had the authority to so extend her sick-leave.

In support of its contention that no extension of sick-leave was accorded plaintiff on January 31, 1961, union defendant introduced into evidence the medical record

of plaintiff during the period of her employment with PTC. Dr. Fred Deardoff, Medical Director of PTC, made the final entry in said record dated January 31, 1961, as follows: "Dr. Lomax (plaintiff's physician), called and stated employee will probably need another month before returning to work. Mr. Weber notified." Since Weber was notified that plaintiff might need another month before returning to work, and did not send a confirmatory letter granting any extension, we are impelled to conclude that the extension plaintiff claims to have received from Thomas was never granted.

In our opinion, PTC had the right to dismiss plaintiff for excess absences, and plaintiff had no justifiable grievance against PTC. We believe that union defendant gave reasonable and diligent study and consideration to the problem of her dismissal, and in the absence of competent evidence of capriciousness and discrimination[3] by PTC, union defendant properly refused to prosecute plaintiff's grievance. Surely, union defendant owes a duty to its membership at large to refrain from expending union funds for a futile cause.

In summary, we conclude that union defendant, in refusing to process plaintiff's grievance or submit it to arbitration, acted in good faith, in a reasonable manner, without fraud, and in accordance with its fiduciary duty toward her. Plaintiff is not entitled to the relief she seeks, and her complaint must thereby be dismissed. . . .

### Decree Nisi

And now, to wit, January 31, 1963, upon hearing and consideration of the above cause, it is ordered, adjudged and decreed that the case of Elizabeth Mandes against Transport Workers Union of Philadelphia, Lo-

---

[3] See holding in Lonergan, footnote 2, supra

cal 234, and Philadelphia Transportation Company, be and the same is hereby dismissed, with prejudice, by agreement of counsel; that the case of John Reichner against Transport Workers Union of Philadelphia, Local 234, and Philadelphia Transportation Company, be and the same is hereby dismissed, with prejudice, by agreement of counsel; that the case of Evelyn Crosby against Philadelphia Transportation Company be and the same is hereby dismissed, with prejudice, by agreement of counsel; and that the case of Evelyn Crosby against Transport Workers Union of Philadelphia, Local 234, be and the same is hereby dismissed.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys, and unless exceptions thereto are filed within 20 days, this decree nisi shall be entered as the final decree of the court. Plaintiff, Evelyn Crosby, to pay the costs of her case only.